# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

               Plaintiff,

v.

                                **MEMORANDUM OF LAW & ORDER ON MOTION FOR COMPASSIONATE RELEASE**
                                Criminal File No. 23-00336 (MJD)

KEITH SJOLIE,

               Defendant.

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Bruce D. Nestor, De León & Nestor, LLC, Counsel for Defendant.

## I.     INTRODUCTION

This matter is before the Court on Defendant Keith Sjolie's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i).  For the following reasons, Sjolie's motion is denied.

## II.     BACKGROUND

On February 21, 2024, Sjolie pleaded guilty to Possession of Methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).

On June 11, 2024, the Court sentenced Sjolie to the mandatory minimum sentence of 60-months in prison. This was a downward variance from Sjolie's Guidelines, which called for a sentence of 87 – 108 months. Sjolie had argued for the mandatory-minimum sentence due to his health problems.

While the Court acknowledged that Sjolie's "litany of health problems, include[ed] that he is a double transplant recipient, is legally blind, and is wheelchair-bound because one of his legs is amputated below the knee due to diabetes complications," the Court also stated that "when Sjolie is out of prison, he is unable to refrain from selling methamphetamine and is unable to explain why this is so. Sjolie appears bewildered by his own conduct in this regard, although he has expressed remorse for doing so." (Doc. 46 (Statement of Reasons for Imposing Sentence) at 4-5.) This last statement acknowledged Sjolie's criminal history, which includes a 2005 guilty plea for conspiracy to distribute methamphetamine and for which Sjolie received a 262-month federal custodial sentence. (PSR ¶ 43.)

The Eighth Circuit affirmed that 2005 judgment, found Sjolie did not present persuasive evidence that he would face unusual hardship or danger in prison due to his medical conditions, and reasoned that Sjolie "continued to

distribute drugs despite his medical problems, even trafficking nine pounds of

methamphetamine several months <u>after</u> he pled guilty [and] . . . while awaiting

sentencing."  <u>United States v. Sjolie</u>, 225 F. App'x 421, 423 (8th Cir. 2007)

(emphasis in original).  Sjolie committed the offense for which he is now

incarcerated while on supervised release from that offense.  (PSR ¶¶ 6, 43, 105.)

Sjolie is currently incarcerated at FMC Devens in Harvard, Massachusetts

with a projected release date in November 2027.  BOP, Find an inmate, https://

www.bop.gov/inmateloc/ (last accessed Apr. 14, 2025).

On January 10, 2025, Sjolie filed an emergency motion for compassionate

release.  On January 15, 2025, he filed a motion for appointment of counsel and

the Court appointed counsel pursuant to 18 U.S.C. § 3006A for the limited

purpose of pursuing compassionate release.  On February 20, 2025, Defense

Counsel filed a memorandum in support of Sjolie's motion.  Defense Counsel

filed BOP Health Services Records from February 4-5, 2025 and February 9-13,

2025 with this memorandum.  On February 24, 2024, Counsel filed two exhibits:

(1) a Report of the Department of Justice titled, <u>Inspection of the Federal Bureau</u>

<u>of Prisons' Federal Medical Center Devens</u> [hereinafter "<u>Inspection</u>"] and (2) a

Statement from a fellow inmate stating that he assists Sjolie with all his tasks of

3

daily living in prison such as dressing, eating, and changing his urine bag. On March 6, 2025, Counsel filed additional BOP Health Services Records. On March 14, 2025, the Government filed its response to Sjolie's motion and supporting exhibits.

## III.    DISCUSSION

### A.    Legal Framework

The court may, upon a defendant's motion following exhaustion of administrative remedies or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

> (a) [R]educe a term of imprisonment (and may impose a term of
> supervised release with or without conditions that does not
> exceed the unserved portion of the original term of
> imprisonment) if, after considering the factors set forth
> in 18 U.S.C. § 3553(a), to the extent that they are applicable, the
> court determines that—
> > (1) [ ] extraordinary and compelling reasons warrant the
> > reduction; .    .    .
> > (2) the defendant is not a danger to the safety of any other
> > person or to the community, as provided in 18 U.S.C.
> > § 3142(g); and
> > (3) the reduction is consistent with this policy statement.
> (b) Extraordinary and Compelling Reasons.—Extraordinary and
> compelling reasons exist under any of the following
> circumstances or a combination thereof:
> > (1) Medical Circumstances of the Defendant.—
> > > .    .    .
> > > (B) The defendant is—

4

> (i) suffering from a serious physical or medical
> condition, .  .  . that substantially diminishes the
> ability of the defendant to provide self-care within
> the environment of a correctional facility and from
> which he or she is not expected to recover.
> (C) The defendant is suffering from a medical condition
> that requires long-term or specialized medical care that
> is not being provided and without which the defendant
> is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(a), (b)(1)(B)(i), (b)(1)(C) (cleaned up).

### B.    Sjolie's Arguments

Sjolie argues that he is entitled to compassionate release because he suffers "from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover" and because "he suffers from medical conditions that require long-term or specialized medical care that is not being provided and without which poses a risk of serious deterioration in health or death."  (Doc. 54 at 1-2.)

Sjolie is 65-years-old and still has the same health issues he had at the time of his sentencing: the conditions the Court cited in the Statement of Reasons plus a history of multiple heart attacks, congestive heart failure, and "COVID-19 and shingles, both of which led to him being hospitalized multiple times." (PSR ¶¶ 59-60.)

While incarcerated for the instant offense, Sjolie contracted shingles that resulted in "open wounds on and around his anus . . . [that] cause extraordinary pain which is unbearable and prevents him from sleeping." (Doc. 54 at 4 (cleaned up).) He had heart failure in December 2024 and has frequent diarrhea. (Id. at 3.) Sjolie requires a wheeled walker to ambulate and needs dentures. He is on a national waiting list for dentures and without them, Sjolie has difficulty consuming certain foods, which has resulted in loss of muscle and fat. (Id.)

On February 5, 2025, Sjolie was transferred to Beth Israel Hospital in Boston due to fungal and urinary tract infections and abnormal test results that indicated an acute kidney injury and a loss of proper kidney function. (See Doc. 55 at 14 (Def. medical record showing increase in creatinine level from 1.65 on 1/24/25 to 2.92 2/05/25).) Sjolie believes these infections threaten "the continued health of his kidney and pancreas transplants." (Doc. 54 at 4.)

Sjolie reports that medical staff at Beth Israel attributed the urinary tract infection to removal of a suprapubic catheter that Sjolie has had in place for many years. (Id. at 4-5.) Sjolie states that the catheter had to be surgically removed because it had been left in place too long, which resulted in "an extraordinarily painful surgical procedure and resulting infection." (Id. at 5.)

However, Defense Counsel was unable to secure Sjolie's Beth Israel medical records, so there is no documentation of these events.[1]

Sjolie argues that delays in treating his conditions in prison resulted in his hospitalization. He stated in email correspondence to his attorney that he informed medical staff at FMC-Devens about the sores around his anus as early as November 2024 and was told this was not a "medical issue" and that if he truly had such sores, he would be unable to walk. (Id. at 4.) He reported he was told to obtain A&D Ointment from the commissary, but the ointment was unavailable there and was also not provided by medical staff. (Id.)

He also asserts that prior to his Beth Israel hospitalization, he was unable to report to "sick call" because he was bedridden (Id.) Medical staff did not see him until other inmates reported at sick call that Sjolie had not been out of bed for three days. (Id.) When he was finally examined on February 4, 2025, he appeared weak, short of breath, and reported periods of incontinence. (Doc. 55 at 16-17.)

---

[1] Some Beth Israel medical records are included in the Government's exhibits (Doc. 62), although these may be records that were part of FMC-Devens' disclosures.

Sjolie admits that once released from Beth Israel, he was placed in the PA Unit of FMC-Devens, which is similar to the ICU of a hospital, and that his immediate medical conditions improved.  (Doc. 54 at 5.)  However, on March 6, 2025, Sjolie sent Defense Counsel an email stating that he had spent six days in Beth Israel for congestive heart failure and diarrhea.  (Doc. 58 at 4 (email message).)  Sjolie said that six pounds of fluid was removed from around his heart, that a CT scan showed "more damage" to his heart, and that he was subjected to "a bunch of tests" to determine why he was having diarrhea.  (Id.)

Sjolie argues that due to his age, right leg amputation, muscle loss and weakness, and shortness of breath, he is unable to care for himself in FMC-Devens in the same manner as he could if he was released to his home and had the assistance of his family members and friends as caregivers.  Because of this inability to care for himself in FMC-Devens, Sjolie asserts that he just goes from medical crisis to medical crisis waiting to get transferred out to the hospital only to get discharged back to FMC-Devens to wait for the cycle to begin again.  (Doc. 54 at 5.)  He argues that his serious medical conditions related to diabetes and his kidney and pancreas transplants coupled with this cycle of medical crisis/ intensive medical intervention at the hospital/ return to inadequate medical care

while awaiting the next crisis "poses a significant risk of death or substantial

deterioration" of his medical condition if he remains incarcerated.

Sjolie thus asks the Court to grant him compassionate release.

## C.    Exhaustion of Administrative Remedies

Before the Court will consider Sjolie's claims, the claims must first be

presented to the BOP.  18 U.S.C. § 3582(c)(1)(A); United States v. Houck, 2 F.4th

1082, 1084 (8th Cir. 2021).  Claims not first presented to the BOP must be

dismissed without prejudice because the exhaustion requirement is a

"mandatory claim processing rule."  Houck, 2 F.4th at 1084.

While there is no record that Sjolie presented the instant claim to the BOP

for consideration, the Government considers Sjolie's 2016 motion for

compassionate release, filed during Sjolie's first federal prison term, his claim to

the BOP since the instant claim is based on essentially the same arguments as the

2016 claim.  Though the Court cannot see the 2016 motion in the record, the

Court will also consider the exhaustion requirement satisfied.[2]

---

[2] It  is unclear if this "motion" was merely a request for relief from the BOP or a
motion that was filed in this Court that for some reason does not appear on the
docket for Defendant's prior federal drug case.  See Docket for Case No. 04-cr-
00367(PJS-FLN) (no mention of Defendant in docket for years 2016-2019).

### D.    Whether Sjolie is Entitled to Compassionate Release Under U.S.S.G. § 1B1.13(b)(1)

Sjolie has not met his burden to show he is "suffering from a medical condition" that requires "long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death" or "that substantially diminishes [his] the ability to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13(b)(1).

Although Sjolie argues that he was unable to see a healthcare provider for days when he was bedridden with the fungal infection around his anus, it appears that as soon as medical staff was aware of his situation, they not only came to him in the Housing Unit, but also admitted him to the PA, consulted with the Beth Isreal transplant team regarding his lab results, and then did not hesitate to transfer him to the hospital.  (Doc. 55 at 13-16, 17 (Sjolie was given handout and counseled on "access to care" on Feb. 4).)  While the records are not entirely clear, it appears that upon his return to FMC-Devens, Sjolie was admitted to the PA Unit for a few days and was discharged from the Unit on February 13 when he was stable and able to continue medications and self-care. (Doc. 62 at 45-46 (discharge note noting, <u>inter alia</u>, that Sjolie "ambulated 10 laps

around PA Unit with walker assistance" on 2/13/25).) Likewise, when Sjolie

reported to health services on February 28, 2025, saying he could not breathe and

was wheezing every time he took a breath, the RN on duty examined Sjolie, ran

an EKG, notified a physician with the test results, and the physician ordered that

Sjolie be transferred to Beth Israel for treatment and tests that were not available

at the prison. (Id. at 35.) At the hospital, Sjolie was treated with IV diuretics and

said he felt better when he returned to FMC-Devens on March 4. (Id. at 8, 11, 22.)

Two days later, he was still feeling well and had "no new concerns." (Id. at 8.)

Sjolie was counseled to return to FMC-Devens Health Services immediately if his

condition worsened. (Id. at 9.)

While the Court is not unsympathetic to the fact that Sjolie had to undergo

surgery to remove his catheter, it is notable that Sjolie does not direct the Court

to orders that FMC-Devens failed to follow requiring that his catheter be

changed more frequently than it had been changed up until the new one was

surgically inserted at Beth Israel. He also does not assert that he asked FMC-

Devens medical staff to change his catheter because it was time to have the

procedure done based on his years of experience living with the medical device.

Even if FMC-Devens failed to follow prior medical orders, it now follows new

orders to change the catheter every two weeks. (<u>See</u> Doc. 55 at 12 (FMC-Devens health records stating catheter will be changed every 2 weeks to prevent UTIs); Doc. 62 at 45 (FMC-Devens PA Unit discharge note stating Sjolie has "standing orders" for catheter change every 2 weeks); <u>Id.</u> at 6-7 (FMC-Devens Mar. 7, 2025 medical record for routine catheter change).)

Thus, the care that is documented in the record—the BOP's initial placement of Sjolie at a federal medical center and FMC-Deven's medical staffs' willingness to consult with specialists at the hospital, to transfer Sjolie to the hospital when necessary, and then to provide follow-up care in the PA Unit— does not show that Sjolie is at "risk of serious deterioration in health or death," that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided," or that he would receive better healthcare at home. For example, Sjolie does not explain how being somewhere other than Devens would have prevented his latest heart issue. He does not state it was caused by inattention, inability to see medical professionals, or anything else under the control of FMC-Devens' staff.

Finally, although Sjolie states that he goes into medical crises as a result of "deficiencies in care" at FMC-Devens, Sjolie has not convinced the Court that the

care he receives is deficient.  (See Doc. 54 n.3 (Sjolie stating that a 2024 DOJ,

Office of the Inspector General's Report reported that "substantial shortages of

healthcare workers" at FMC-Devens creates "widespread and troubling

operational challenges at FMC Devens that substantially affect the health,

welfare, and safety of employees and inmates" (quoting Inspection, at 3

(Executive Summary)).)  Sjolie appears to, as the Government noted, see

providers almost every few days.  (Doc. 61 at 8.)  Contrary to Sjolie's argument

that he merely goes from crisis to crisis, the record shows that healthcare workers

are attentive when Sjolie presents to them.  Sjolie does not argue to the contrary.

That he sometimes has issues requiring hospitalization is the very reason this

Court recommended in its Judgment that Sjolie be housed in a federal medical

center.  (Doc. 44 at 2.)  Sjolie is not entitled to compassionate release on this basis.

     **E.**    **Whether Sjolie is a Danger to the Safety of any Other Person or to the Community Under U.S.S.G. § 1B1.13(a)(2)**

Even if the Court had found Sjolie was entitled to compassionate release

based on his medical conditions, the Court would still deny his motion because

the Court finds that despite those conditions, Sjolie is a danger to the safety of the

community.  Sjolie's medical issues have not prevented him from dealing in the

past, even while he was under supervision and while awaiting sentencing for a

federal drug sale conviction.  Moreover, Sjolie, himself, does not understand why he does what he does.  (See Doc. 46 at 5.)  Because no combination of his medical conditions, federal supervision, and the support of his friends and family (see id. (family members attended sentencing)) seems to deter Sjolie from selling drugs, Sjolie is a danger to the safety of the community.

F.    **18 U.S.C. § 3553(a) Factors**

The Court finds that early release would be contrary to the factors set forth in 18 U.S.C. § 3553(a).  The Court sentenced Sjolie to the sixty-month mandatory minimum sentence for his second federal drug crime, far below the bottom of Sjolie's Guideline range, which was 87 – 108 months.  Releasing him after he served less than one-third of his sentence would create unwarranted sentencing disparities with others who have committed similar crimes and would not reflect the seriousness of Sjolie's offense, protect the public, or afford adequate deterrence to criminal conduct to a defendant who has not been deterred from selling drugs by an even longer previous custodial sentence.[3]  See United States v. Jackson, No. 15-CR-2607 (PAM/TNL), 2021 WL 806366, at *2 (D. Minn. Mar. 3,

_____

[3] With credit for 9 months in the custody of the BOP plus credit for his time in pretrial detention, the Court estimates that Defendant has served approximately 17 months of his 60-month sentence.

2021) (§ 3553(a) factors, including that defendant had only served 20% of sentence, need to avoid unwarranted sentencing disparities, and need to protect public, weighed in favor of denying motion for compassionate release); <u>United States v. Davila</u>, No. 20-CR-8(1) (ECT/TNL), 2022 WL 1553569, at *3 (D. Minn. May 17, 2022) (§ 3553(a) factors, including that defendant had only served small percentage of sentence and need to protect public, weighed in favor of denying motion for compassionate release).  Therefore, Sjolie's motion is also denied on this basis.

## IV.    ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion For Compassionate Release from Custody **[Doc. 48]** is **DENIED**.


Date:  April 30, 2025

s/Michael J. Davis
Michael J. Davis
United States District Court
